UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GRADY KRZYWKOWSKI,

        Plaintiff,

    v.                           **Civil Action 2:24-cv-3902**
                                    **Judge Michael H. Watson**
                                    **Magistrate Judge Chelsey M. Vascura**

MIKE DAVIS, *et al.*,

        Defendants.

## ORDER and REPORT AND RECOMMENDATION

       Plaintiff, an Ohio inmate proceeding without the assistance of counsel, sues a number of employees of the Ohio Department of Rehabilitation and Correction for breach of a settlement agreement protecting Plaintiff's religious accommodations and for retaliation in violation of the First Amendment. This matter is before the Court for the initial screen of Plaintiff's Amended Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Amended Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1)–(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). This matter is further before the Court on Interested Party the State of Ohio's Motion to Dismiss (ECF No. 4) as well as several miscellaneous motions by Plaintiff (ECF Nos. 11, 25, 27.) For the reasons that follow, Plaintiff **MAY PROCEED** on his claims for breach of the settlement agreement and retaliation with exceptions as noted, and it is **RECOMMENDED** that the State of Ohio's Motion to Dismiss be

**GRANTED IN PART and DENIED IN PART**. Further, Plaintiff's Motion for Court Intervention (ECF No. 11) is **DENIED**, Plaintiff's Amended Motion to Strike (ECF No. 25) is **DENIED**, and Plaintiff's Motion for Extension of Time (ECF No. 27) is **DENIED AS MOOT**.

This matter is also before the Court for consideration of Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2), which is **GRANTED**. (ECF No. 1.) Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statement reveals that he had $93.49 in his prison account at the time of commencing this action, which is insufficient to pay the filing fee.

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust accounts (Inmate ID Number A409984) at the Marion Correctional Institution is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six months immediately preceding the filing of the Complaint.

After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00, until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Checks should be made payable to: Clerk, United States District Court. The checks should be sent to:

> Prisoner Accounts Receivable
> 260 U.S. Courthouse
> 85 Marconi Boulevard
> Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

2

It is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office.

## I.     BACKGROUND

As an initial matter, Plaintiff filed his original Complaint on January 30, 2024. (ECF No. 1-1). Interested Party the State of Ohio filed a Motion to Dismiss on February 21, 2024. (ECF No. 4.) On February 23, 2024, Plaintiff filed an Amended Complaint (ECF No. 5), which was permitted without leave of Court or consent of the opposing parties under Federal Rule of Civil Procedure 15(a)(1). As best the Court can discern, the 68-page Amended Complaint is identical to the 63-page original Complaint, with the exceptions of an expanded jurisdictional statement (*id.* at 3), a more detailed description of the parties, which clarifies that each Defendant is sued in both their official and individual capacities (*id.* at 4–5), a request for declaratory and injunctive relief in addition to, rather than in the alternative to, the breach of contract remedies he seeks (*id.* at 1), a request for an emergency hearing or status conference on his Complaint (*id.*), and the addition of paragraph numbers to Plaintiff's factual allegations (*id.*, *passim*).[1] Because the alterations to the Amended Complaint do not affect the Court's screening analysis or the arguments contained in the State of Ohio's Motion to Dismiss, the Court deems the Amended Complaint (ECF No. 5) to be the operative Complaint and both screens the Amended Complaint under §§ 1915 and 1915A and applies the State of Ohio's dismissal arguments to the Amended Complaint.

---

[1] Plaintiff also filed both his original and Amended Complaints again on May 13, 2024. (ECF Nos. 21, 21-2.)

Plaintiff adheres to the Netzarim or Natsarim Messianic Jewish faith and has a long history of conflict with ODRC regarding accommodations for his religious beliefs. (Am. Compl. ¶ 13, ECF No. 5.) In 2014, when Plaintiff was housed at Grafton Correctional Institution ("GCI"), Plaintiff filed suit against several ODRC employees alleging that they violated his First and Fourteenth Amendment rights and the Religious Land Use and Institutionalized Persons Act, and that they retaliated against him when he sought to assert his rights. (*See* S.D. Ohio Case No. 2:14-cv-2159.) The parties to that case eventually reached a settlement agreement in 2018 and stipulated to dismissal in 2019. The settlement agreement provides that "Defendants" (which is defined in the agreement to include ODRC) "shall continue to provide [religious] accommodations to Plaintiff in accordance with ODRC policy." (Settlement Agreement § II.3, ECF No. 4-3.) Specifically,

> 4. Defendants shall continue to exercise best efforts to provide Plaintiff access to the Grafton Correctional Institution ("GCI") chapel on Saturday mornings for congregational Shabbat services or the viewing of Natsarim/Messianic Jewish instructional videos as space, staffing, and ODRC policies permit.

> 5. Defendants shall continue to exercise best efforts to follow up with qualified Natsarim volunteers who have been identified to them to assist with and/or lead Natsarim congregate services on Shabbat and/or Natsarim holy days.

> 6. Absent good cause, Defendants shall continue to provide Plaintiff sacked meals for Shabbat ("Shabbat sacked meals") which are prepared prior to sundown on each Friday (but not more than twenty-four (24) hours before each such sundown) and stored in the GCI food services area.

> * * *

> 8. Absent good cause, Defendants shall provide Plaintiff sacked meals on the eight (8) Natsarim holy days which are identified in the Complete Believer's Calendar: Pesach (2 days), Shavuot (1 day), Yom Teruah (2 days), Yom Kippur (1 day) and Sukkot (2 days) . . . .

> * * *

4

> 10. Defendants shall exercise best efforts to provide Plaintiff access to the GCI chapel to view Natsarim/Messianic Jewish instructional videos on the eight (8) Natsarim holy days . . . .

(*Id.* at §§ II.4–II.10.) The settlement agreement further provides that, should Defendants breach any of the agreement's terms, Plaintiff may initiate a new lawsuit in a state court or in the United States District Court for the Southern District of Ohio, in which case Plaintiff must identify the paragraphs of the agreement which he believes Defendants violated. (*Id.* at § V.)

Plaintiff alleges that Defendants began breaching the settlement agreement almost immediately after entering into it. Plaintiff contends that several times during the period of 2018 through 2023, Defendants "did not exercise best efforts when they denied the Plaintiff access to weekly 7th Day Sabbath Natsarim Jewish religious services, i.e., Netzarim High Holy days or access to his religious items., including [ ] interfering with prospective Netzarim clergy volunteers, interruption to his religious diets, work proscriptions, inhibiting the Plaintiff's religious items." (Am. Compl. ¶ 16, ECF No. 5.) Plaintiff also alleges that Defendants retaliated against him for asserting his rights to religious accommodations by placing him in segregated housing, issuing grievance restrictions, and issuing false conduct reports. (*Id.* at ¶ 70.) Plaintiff filed an action for breach of the settlement agreement and retaliation in the Court of Common Pleas for Lorain County, Ohio, in 2021. (*See Krzywkowski v. Foley*, *et al.*, Lorain County Court of Common Pleas, Case No. 21-cv-20424.) Plaintiff survived summary judgment in that case, but later voluntarily dismissed the action without prejudice, over the defendants' objections, on May 8, 2023. (*See* State Court Filings, ECF No. 1-16, PAGEID #365–367.)

Plaintiff alleges that Defendants in this case retaliated against him after he dismissed the Lorain County action by transferring Plaintiff out of the Faith Based Housing Unit where he had resided since July 2021; failing to provide Plaintiff with a functional GTL ViaPath tablet (which was necessary for inmates to access the grievance procedure); canceling Messianic religious

services; preventing a Messianic volunteer from entering GCI to facilitate Sabbath services; and using chapel porters to harass Plaintiff and fellow congregates when attempting to use the chapel on Saturday mornings. (Am. Compl. ¶¶ 23–25, ECF No. 5.) Further, Defendants transferred Plaintiff from GCI to Marion Correctional Institution ("MCI"). (*Id.* at ¶ 27.) In denying Plaintiff's appeal of the transfer, Defendant Jeff Mustard (ODRC's Chief of Bureau of Classification and Reception) asserted that the transfer was made to "accommodate [Plaintiff's] programming, education, and religious needs," and that Plaintiff would still be within "the same Northwest catchment area as GCI which will provide for family visits." (Sept. 5, 2023 Letter, ECF No. 1-10, PAGEID #220.) However, Plaintiff's family actually lives in Northeast Ohio, significantly further away from MCI than from GCI. (Am. Compl. ¶ 29, ECF No. 5.) Moreover, after transfer, Defendants denied Plaintiff's religious accommodations by denying access to Netzarim videos and clergy-led religious services. (Am. Compl. ¶ 31, ECF No. 5.) In fact, Defendant Mike Davis (ODRC's Religious Service Administrator) sent an email to Defendant Blaire Smith (MCI's Chaplain) and Defendant Katrenia Baker-Webb (MCI's Deputy Warden) suggesting that ODRC need not comply with the settlement agreement's requirements to provide religious accommodations to Plaintiff at all while he was housed at MCI. (*See* Sept. 18, 2023 Email, ECF No. 1-9, PAGEID #205) ("For the record, the settlement was just for GCI."). Plaintiff alleges that Defendants continue to deny his religious accommodations while allowing other Jewish, Muslim, and Christian inmates to gather in groups in the chapel, observe work proscriptions, and observe religious diets. (Am. Compl. ¶ 91, ECF No. 5.) Plaintiff further alleges that MCI had Messianic videos on hand and space to accommodate Plaintiff and other Messianic Jewish inmates to watch them, but that Defendants failed to exercise their best efforts to make these videos available to him and other inmates. (*Id.* at ¶ 35.)

Plaintiff commenced this action on January 30, 2024. (ECF No. 1.) The undersigned construes Plaintiff's Amended Complaint to advance claims for breach of the settlement agreement and retaliation in violation of his First Amendment rights. Plaintiff seeks a declaratory judgment that the settlement agreement's terms apply to Plaintiff's tenure at MCI and to any other ODRC institution to which Plaintiff is transferred; an injunction to prevent future retaliation and to ensure the settlement agreement's terms are enforced at MCI or any future institution; and rescission of the settlement agreement and punitive damages. (Am. Compl. ¶ 11, 51–52, ECF No. 5.) The State of Ohio filed a Motion to Dismiss on February 21, 2024. (ECF No. 4.)

## II.     STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e), which provides in pertinent part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted. . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See also* 28 U.S.C. § 1915A (requiring a court to conduct a screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . . [to] identify cognizable claims or dismiss the complaint, or any portion of the complaint [that is] frivolous, malicious, or fails to state a claim upon which relief may be granted").

Further, to properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd*., *P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, in order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to

8

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

The same pleading standards applicable to the Court's initial screen under §§ 1915(e)(2) and 1915A(b) are used to evaluate the State of Ohio's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Hill*, 630 F.3d at 471.

### III.    ANALYSIS

The undersigned considers Plaintiff's breach of contract and retaliation claims in turn.

### A.    Plaintiff has stated a claim for breach of the settlement agreement.

"To establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (quoting *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 104 N.E.3d 1076, 1083 (Ohio Ct. App. 2018)). The undersigned that Plaintiff has sufficiently alleged that the settlement agreement is a valid contract, that Plaintiff has performed his obligations under the settlement agreement, that Defendants have breached their obligations by failing to exercise best efforts to make the accommodations related to chapel access, video viewing, and Natsarim volunteers

9

enumerated in the settlement agreement,[2] and that Plaintiff has been injured as a result by the limitations on his ability to practice his religion.

The State of Ohio contests only the third element, arguing that the settlement agreement requires much less of Defendants than Plaintiff contends. It is true that the settlement agreement does not require outright that Plaintiff be provided with chapel access or congregate worship opportunities; these accommodations are subject to ODRC policy and Defendants' exercise of their "best efforts" to provide them, and in some cases the accommodations may be denied for "good cause." (*See* Settlement Agreement §§ II.3–II.10, ECF No. 4-3.) Yet Plaintiff's allegations that other religious groups at MCI are accommodated in the manner he is seeking plausibly suggests that Plaintiff's requested accommodations are in line with ODRC policy and that Defendants are not using their best efforts to accommodate him. Further, the State of Ohio does not dispute that Defendant Mike Davis, ODRC's Religious Service Administrator, instructed two MCI employees that the settlement agreement was not effective at MCI. That instruction raises the plausible inference that Defendants declined to use their best efforts to make the accommodations enumerated in the settlement agreement while Plaintiff was housed at MCI. Notably, the State of Ohio does not argue in its Motion to Dismiss that Mr. Davis was correct in his interpretation of the settlement agreement.

Although the State of Ohio argues that various circumstances make it reasonable for Defendants to have denied Plaintiff's accommodations without breaching the settlement agreement, those allegations are not contained in Plaintiff's Complaint or its exhibits. They therefore may not be considered by the Court at this stage. *See Max Arnold & Sons, LLC v. W.L.*

---

[2] The undersigned agrees with the State of Ohio that Plaintiff has not alleged that Defendants have failed to provide him with sack meals as required by the settlement agreement.

*Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006). Considering the allegations properly before the Court, the undersigned concludes that Plaintiff has stated a claim for breach of the settlement agreement.

However, the State of Ohio is correct that the punitive damages that Plaintiff seeks are unavailable on his contract claim. *See Steinberg v. Ogden Foods, Inc.*, 501 F.2d 1339, 1341 (6th Cir. 1974); *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 467 (Ohio 2018). Accordingly, to the extent that Plaintiff seeks punitive damages for breach of contract, the undersigned recommends dismissal of that claim.

**B.      Plaintiff has stated a claim for retaliation.**

A First Amendment retaliation claim involves three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The undersigned finds that Plaintiff engaged in protected conduct by seeking religious accommodation and by filing, maintaining, and dismissing his suit against Defendants in Lorain County. *See Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011) ("Prisoners retain the First Amendment right to the free exercise of their religion.") (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)); *Thaddeus-X*, 175 F.3d at 391 (inmates have a First Amendment right to file lawsuits challenging their prison conditions).

Plaintiff has also alleged an adverse action in the form of his transfer from GCI to MCI. Although transfers to a different facility are not typically considered adverse actions for purposes of a retaliation claim, "a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Hill v.*

11

*Lappin*, 630 F.3d 468, 474 (6th Cir. 2010). The United States Court of Appeals for the Sixth Circuit has specifically held that a transfer may constitute an adverse action when it has the effect of depriving the plaintiff of benefits due under a settlement agreement. *See LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013). Like Plaintiff in this case, the plaintiff in *LaFountain* and the Michigan Department of Corrections entered into a settlement agreement, which required that LaFountain be housed in a particular facility to allow for family visits and to avoid retaliation from correctional officers at a prior facility. *Id.* at 947. After LaFountain filed grievances against correctional officers at his new facility, he was immediately transferred back to the prior facility. *Id.* The Sixth Circuit held that the case before it was "extraordinary, at least on the pleadings, because of the alleged settlement agreement." *Id.* at 948. "Whether LaFountain's transfer amounted to an adverse action for purposes of his retaliation claim, therefore, cannot be resolved at [the pleadings] stage" because "[t]he complaint alleges that the transfer deprived LaFountain of the agreement's benefits." *Id.* Just like in *LaFountain*, Plaintiff's Complaint alleges that his transfer to MCI, shortly after his voluntary dismissal of the Lorain County action over Defendants' objections, had the effect of depriving Plaintiff of the settlement agreement's benefits because Defendants took the position that the settlement agreement was ineffective upon Plaintiff's transfer to MCI. The undersigned therefore cannot conclude that Plaintiff's transfer to MCI was insufficiently adverse to support a First Amendment retaliation claim.

Moreover, Plaintiff alleges a number of other adverse actions (transferring Plaintiff out of the Faith Based Housing Unit; failing to provide Plaintiff with a functional tablet to access the grievance procedure; canceling Messianic religious services and preventing a Messianic volunteer from entering GCI to facilitate Sabbath services; and using chapel porters to harass

Plaintiff and fellow congregates). To be adverse for the purpose of a First Amendment retaliation claim, Plaintiff need only allege conduct that would "deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (cleaned up). At this early stage, the undersigned cannot conclude that these actions, taken together, could not be sufficiently adverse to support a retaliation claim. *See id.* (quoting with approval *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("'[A]n entire campaign of harassment' was actionable because although it was 'trivial in detail,' it 'may have been substantial in gross.'").

Finally, Plaintiff's allegations support an inference that Defendants' adverse actions were causally connected to Plaintiff's protected activity. Mr. Davis's email suggesting that the settlement agreement was effective only while Plaintiff was housed at GCI, combined with Mr. Mustard's statements implying that Plaintiff's transfer to MCI was for Plaintiff's own benefit in the face of Plaintiff's allegations to the contrary, raises the plausible inference that Plaintiff was transferred to MCI for the purpose of avoiding ODRC's obligations under the settlement agreement. And Plaintiff alleges that the remaining adverse actions occurred in temporal proximity with his maintaining and dismissing (over Defendants' opposition) his Lorain County action. This temporal proximity, in combination with Mr. Davis's and Mr. Mustard's correspondence, sufficiently establishes the required causal connection. *See Maben v. Thelen*, 887 F.3d 252, 268 (6th Cir. 2018). The undersigned therefore concludes that Plaintiff has stated a claim for First Amendment retaliation.

The State of Ohio argues that various circumstances make any inference of retaliatory motive implausible; but again, those circumstances are not contained in Plaintiff's Complaint or its exhibits. They therefore may not be considered by the Court at this stage. *See Max Arnold &*

*Sons*, 452 F.3d at 503. Considering the allegations properly before the Court, the undersigned concludes that Plaintiff has stated a claim for First Amendment retaliation.

**C.      Plaintiff has not stated a claim against Gary Mohr or the Doe Defendants.**

Although not included in Plaintiff's list of Defendants on page 2 of his Original and Amended Complaints, Plaintiff include Gary Mohr in the caption of both Complaints. The remainder of the Complaints are devoid of any allegations concerning Gary Mohr. Similarly, Plaintiff includes "Unknowns, John/Jane Doe" in his list of Defendants, but Plaintiff fails to allege any conduct by the Doe Defendants beyond generalized claims that they violated the settlement agreement and retaliated against him. Therefore, to the extent that Plaintiff advances any claims against Gary Mohr or the Doe Defendants, it is recommended that those claims be dismissed.

**D.      Plaintiffs' Miscellaneous Motions**

Plaintiff filed a Motion for Court Intervention, complaining of delays in incoming and outgoing mail related to this case. (ECF No. 11.) As a result, Plaintiff seeks permission to make his filings and receive service electronically. Plaintiff also asks that the Court obtain control numbers under ODRC's legal mail policy for its mailings to Plaintiff. The undersigned does not find electronic filing access to be warranted at this time. The Court also declines to obtain control numbers for its mailings. Plaintiff's Motion for Court Intervention is therefore denied. However, ODRC must treat mail from this Court to Plaintiff as legal mail under *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003) ("we hold that mail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise").

Next, Plaintiff filed a Motion to Strike the State of Ohio's Reply in support of its Motion to Dismiss (ECF No. 22.) That motion was terminated as moot when Plaintiff filed an Amended

Motion to Strike (ECF No. 25.) Plaintiff's Amended Motion to Strike states that he was not served with the Reply and that it should be stricken on that ground, and that sanctions should be imposed for the failure of service. Once the State of Ohio received notice of Plaintiffs' original Motion to Strike, it determined that it had inadvertently failed to serve Plaintiff with the Reply and proceeded to serve Plaintiff with the Reply by certified mail. (Notice of Service, ECF No. 26.) The Court can discern no prejudice to Plaintiff by the late service of the Reply, as this Court's Local Rules do not afford Plaintiff a response to the Reply. *See* S.D. Ohio Civ. R. 7.2(a)(2). Accordingly, there are no grounds to strike the Reply or impose sanctions.

Finally, Plaintiff filed on June 20, 2024, a Motion for Extension of Time until July 6, 2024, to file a reply in support of his Amended Motion to Strike. (ECF No. 27.) However, before the Motion for Extension of Time could be ruled on, Plaintiff filed his Reply in support of his Amended Motion to Strike on June 24 (ECF No. 28). Accordingly, Plaintiff's Motion for Extension of Time is moot.

## IV.    DISPOSITION

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1) is **GRANTED**. Plaintiff **MAY PROCEED** on his claims for breach of the settlement agreement and First Amendment retaliation, with the exceptions that it is **RECOMMENDED** that his contractual claims for punitive damages, and all claims against Gary Mohr and "Unknowns, John/Jane Does," be **DISMISSED**. Accordingly, it is **RECOMMENDED** that the State of Ohio's Motion to Dismiss (ECF No. 4) be **GRANTED IN PART and DENIED IN PART**.

It is further **ORDERED** that Plaintiff's Motion for Court Intervention (ECF No. 11) is **DENIED**, but that ODRC is **ORDERED** to treat mail from this Court to Plaintiff as legal mail under *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003). The Clerk of Court is **DIRECTED** to serve this Order on the Mailroom Supervisor at Marion Correctional Institution.

It is further **ORDERED** that Plaintiff's Amended Motion to Strike (ECF No. 25) is

**DENIED** and Plaintiff's Motion for Extension of Time (ECF No. 27) is **DENIED AS MOOT**.

Finally, Plaintiff has submitted summonses and United States Marshal Service forms for

use in effecting service of process over Defendants. (ECF Nos. 1-24, 1-25.) In light of Plaintiff's

*in forma pauperis* status and the undersigned's determination that Plaintiff may proceed on his

claims for breach of the settlement agreement and retaliation, the Clerk is **DIRECTED** to issue

the summonses, and the United States Marshal is **DIRECTED** to serve by certified mail upon

the Defendants the issued summonses, a copy of the Amended Complaint (ECF No. 5), and a

copy of this Order and Report and Recommendation.

## <u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within fourteen

(14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A District Judge of this Court shall make a *de novo*

determination of those portions of the Report or specified proposed findings or recommendations

to which objection is made. Upon proper objections, a District Judge of this Court may accept,

reject, or modify, in whole or in part, the findings or recommendations made herein, may receive

further evidence or may recommit this matter to the Magistrate Judge with instructions.  28

U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to have the District Judge review the Report

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE