UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


GRADY KRZYWKOWSKI,

       Plaintiff,

   v.                            **Civil Action 2:24-cv-3902**
                                      **Judge Michael H. Watson**
                                      **Magistrate Judge Chelsey M. Vascura**

MIKE DAVIS, *et al.*,

       Defendants.


**REPORT AND RECOMMENDATION**

Plaintiff, Grady Krzywkowski, an Ohio inmate who is proceeding without the assistance of counsel, sues several employees of the Ohio Department of Rehabilitation and Correction ("ODRC"), Grafton Correctional Institution ("GCI"), and Marion Correctional Institution ("MCI") for breach of a settlement agreement protecting Plaintiff's religious accommodations and for retaliation in violation of the First Amendment. Defendants have moved for summary judgment. (ECF No. 128.) For the reasons that follow, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED IN PART and DENIED IN PART**.

## I.     BACKGROUND

Plaintiff adheres to the Netzarim or Natsarim Messianic Jewish faith (Pl.'s Decl. ¶ 30, ECF No. 139-1) and has a long history of conflict with ODRC regarding accommodations for his religious beliefs. In 2014, while he was housed at GCI, Plaintiff filed suit against several ODRC employees, alleging that they violated his First and Fourteenth Amendment rights and the Religious Land Use and Institutionalized Persons Act, and that they retaliated against him when

he sought to assert his rights. (*See* S.D. Ohio Case No. 2:14-cv-2159.) The parties to that case eventually reached a settlement agreement in 2018 (the "Settlement Agreement") and stipulated to dismissal in 2019. The Settlement Agreement provides that "Defendants" (defined in the agreement to include ODRC) "shall continue to provide [religious] accommodations to Plaintiff in accordance with ODRC policy." (Settlement Agreement § II.3, ECF No. 4-3.) Specifically,

> 4. Defendants shall continue to exercise best efforts to provide Plaintiff access to the Grafton Correctional Institution ("GCI") chapel on Saturday mornings for congregational Shabbat services or the viewing of Natsarim/Messianic Jewish instructional videos as space, staffing, and ODRC policies permit.

> 5. Defendants shall continue to exercise best efforts to follow up with qualified Natsarim volunteers who have been identified to them to assist with and/or lead Natsarim congregate services on Shabbat and/or Natsarim holy days.

> \* \* \*

> 10. Defendants shall exercise best efforts to provide Plaintiff access to the GCI chapel to view Natsarim/Messianic Jewish instructional videos on the eight (8) Natsarim holy days . . . .

(*Id.* at §§ II.4–II.10.) The Settlement Agreement further provides that, should Defendants breach any of the Agreement's terms, Plaintiff may initiate a new lawsuit in a state court or in the United States District Court for the Southern District of Ohio. (*Id.* at § V.)

Plaintiff alleges that Defendants began breaching the Settlement Agreement almost immediately after it was executed. Plaintiff contends that several times between 2018 and 2023, Defendants "did not exercise best efforts when they denied the Plaintiff access to weekly 7th Day Sabbath Natsarim Jewish religious services, i.e., Netzarim High Holy days or access to his religious items., including [ ] interfering with prospective Netzarim clergy volunteers, interruption to his religious diets, work proscriptions, inhibiting the Plaintiff's religious items." (Am. Compl. ¶ 16, ECF No. 5.) Plaintiff also alleges that Defendants retaliated against him for asserting his rights to religious accommodations by placing him in segregated housing, issuing

2

grievance restrictions, and issuing false conduct reports. (*Id.* at ¶ 70.) In 2021, Plaintiff filed an action for breach of the Settlement Agreement and retaliation in the Court of Common Pleas for Lorain County, Ohio. (*See Krzywkowski v. Foley*, *et al.*, Lorain County Court of Common Pleas, Case No. 21-cv-20424.) Plaintiff survived summary judgment in that case, but later voluntarily dismissed the action without prejudice, over the defendants' objections, on May 8, 2023. (*See* State Court Filings, ECF No. 1-16, PAGEID #365–367.)

Three months after the dismissal of the Lorain County action, Plaintiff was transferred from GCI to MCI on August 21, 2023. (Mustard Decl. ¶ 4, ECF No. 129-7.) After the transfer, Defendants declined to make the MCI chapel available to Plaintiff on the same terms required by the Settlement Agreement for the GCI chapel. Defendants took the position that the Settlement Agreement did not require them to provide chapel access to Plaintiff at MCI. (*See* Sept. 18, 2023 Email from Mike Davis to Blaire Smith and Katrenia Baker-Webb, ECF No. 1-9, PAGEID #205) ("For the record, the settlement was just for GCI.")

Plaintiff commenced this action on January 30, 2024. (ECF No. 1.) After an initial screen of Plaintiff's Amended Complaint under 28 U.S.C. §§ 1915, 1915A, and after ruling on Defendants' Motion for Judgment on the Pleadings, the Court concluded that Plaintiff could proceed on his claims for breach of contract and First Amendment retaliation. (ECF Nos. 33, 41, 94, 99.) Defendants filed the subject Motion for Summary Judgment on November 7, 2025. (ECF No. 128.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all

reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

### III.     ANALYSIS

#### A.     Breach of Contract

"To establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (quoting *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 104 N.E.3d 1076, 1083

4

(Ohio Ct. App. 2018)). Defendants contest only the third element of Plaintiff's breach of contract claims.

Defendants are entitled to summary judgment on Plaintiff's claim that they breached the Settlement Agreement provision requiring them to "continue to exercise best efforts to follow up with qualified Natsarim volunteers who have been identified to them to assist with and/or lead Natsarim congregate services on Shabbat and/or Natsarim holy days." (Settlement Agreement, § II.5, ECF No. 4-3.) Defendant Ronald Smith, GCI's chaplain at the time Plaintiff was housed there, avers that he contacted each of the eleven prospective volunteers identified to him by Plaintiff as well as four other potential volunteers. (R. Smith Decl.¶¶ 4–5, ECF No. 129-1). Further, Defendant Blaire Smith, MCI's chaplain, also avers that he contacted each of the seven prospective volunteers identified to him by Plaintiff, and also "call[ed] every Messianic, Sabbatarian, and Netzarim house of worship within a 2-hour radius of MCI to find additional religious leaders interested in commuting to MCI to lead worship services or who knew of someone else who would be willing to do so." (B. Smith Decl. ¶¶ 4–5, ECF No. 129-6.) Plaintiff does not dispute this evidence. And though the parties dispute why Rabbi Humphrey refused to continue volunteering at MCI (Plaintiff alleges that prison officials made him feel unsafe when they accused him of misconduct that was never verified), Defendants have established that they discharged their duty to "exercise best efforts to follow up" with relevant volunteers. Defendants are therefore entitled to summary judgment on Plaintiff's claim for breach of § II.5 of the Settlement Agreement.

Defendants are not, however, entitled to summary judgment on Plaintiff's claim that they breached the Settlement Agreement's provisions requiring them to exercise best efforts to provide Plaintiff with chapel access while he was housed at MCI. (Settlement Agreement §§ II.4,

II.10, ECF No. 4-3.) First, Defendant Mike Davis (ODRC's Religious Service Administrator) sent an email to Defendant Blaire Smith (MCI's Chaplain) and Defendant Katrenia Baker-Webb (MCI's Deputy Warden) suggesting that ODRC need not comply with the Settlement Agreement's requirements while Plaintiff was housed at MCI. (*See* Sept. 18, 2023 Email, ECF No. 1-9, PAGEID #205) ("For the record, the settlement was just for GCI."). Defendants explain this by asserting that chapel access was not necessary to accommodate Plaintiff's religious needs at MCI, because MCI (unlike GCI) has a television system allowing for the streaming of religious videos to Plaintiff's personal TV or any day room TV without interruption. (Baker-Webb Decl. ¶ 3, ECF No. 129-8).[1] Thus, argue Defendants, the chapel access provisions of the Settlement Agreement were necessary only because there was no alternative location at GCI for Plaintiff to view religious videos. Once alternate spaces became available to Plaintiff following his transfer to MCI, Defendants contend that they were no longer obligated to provide chapel access.

The problem with this argument is that it is unsupported by the text of the Settlement Agreement. The agreement requires Defendants to use their best efforts to "provide Plaintiff *access to the Grafton Correctional Institution ("GCI") chapel* on Saturday mornings for congregational Shabbat services or the viewing of Natsarim/Messianic Jewish instructional videos as space, staffing, and ODRC policies permit" and to "provide Plaintiff *access to the GCI chapel* to view Natsarim/Messianic Jewish instructional videos on the eight (8) Natsarim holy days . . . ." (Settlement Agreement §§ II.4, II.10, ECF No. 4-3) (emphasis added). This plain language is definitive as to the obligation to provide chapel access. *See*, *e.g.*, *Shanesville Invs.*

---

[1] Even if true in theory, Plaintiff disputes that religious videos are available to him in practice. (Dowell Decl. ¶¶ 9–10, ECF No. 139-15 (averring that these videos "often . . . do not play at all").)

6

*LLC v. Eclipse Res. I, LP*, 358 F. Supp. 3d 665, 670 (S.D. Ohio 2018) (courts interpreting contracts must give effect to the intent of the parties, and "the Court presumes the intent of the parties will reside in the language they choose to use in their agreement") (cleaned up) (citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999), and *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996)). Defendants cannot read out provisions of the Settlement Agreement because it suits their purpose (or even because they think it suits Plaintiff's purpose).

Defendants fare no better in arguing that they were not required to provide access to the MCI chapel, because the Settlement Agreement speaks only to the GCI chapel. When one considers that Defendants held—and exercised—the unilateral right to transfer Plaintiff to a different facility (which, according to this argument, terminated Defendants' obligation to provide chapel access), without affording Plaintiff a reciprocal right to terminate his obligations under the Settlement Agreement, Defendants' view of the Settlement Agreement would render the chapel access provision illusory. *See, e.g.*, *Faurecia Auto. Seating, Inc. v. Toledo Tool & Die Co.*, 579 F. Supp. 2d 967, 973 (N.D. Ohio 2008) ("By giving Faurecia an exclusive right to terminate the Letters without liability only as to it, while failing to give the same right to Toledo Tool, the Letters of Intent are illusory."). But "courts disfavor interpretations that render contracts illusory or unenforceable, and prefer a meaning, which gives the contract vitality." *Northgate Lincoln-Mercury Inc. v. Ford Motor Co.*, 507 F. Supp. 3d 940, 947 (S.D. Ohio 2020) (cleaned up). Accordingly, the undersigned construes the Settlement Agreement to require Defendants to use their best efforts to provide chapel access in whatever facility Plaintiff is housed. As Defendants have offered no evidence to demonstrate that they used *any* efforts, let alone their best efforts, to make the MCI chapel available to Plaintiff, Defendants are not entitled

7

to summary judgment on Plaintiff's claim for breach of the Settlement Agreement's chapel access provisions.

The Court, however, must be mindful of the appropriate Defendants for this claim. Only those Defendants who were responsible for construing the Settlement Agreement in a legally indefensible manner to deny Plaintiff access to MCI's chapel could be said to have breached the Settlement Agreement. The September 18, 2023 email from Defendant Davis asserting that "the settlement was just for GCI" establishes Davis's involvement in construing the Settlement Agreement. (*See* Sept. 18, 2023 Email from Mike Davis to Blaire Smith and Katrenia Baker-Webb, ECF No. 1-9, PAGEID #205). But the record lacks evidence demonstrating as a matter of law that any of the other Defendants were involved in construing the Settlement Agreement to deny Plaintiff chapel access. Although Defendants Katrenia Baker-Webb (MCI's Deputy Warden) and Blaire Smith (MCI's chaplain) would have determined Plaintiff's chapel access absent the Settlement Agreement, it appears that they merely followed the instructions of Davis, the Religious Service Administrator for all of ODRC, in denying Plaintiff access to MCI's chapel. (*See* Baker-Webb Decl. ¶ 10, ECF No. 129-8) ("[Defendant] Davis also told me that the chapel access the Settlement Agreement provided for Mr. Krzywkowski only applied to the chapel at GCI, and not the chapel at MCI . . . ."). Accordingly, Plaintiff's breach of contract claim may proceed only against Defendant Davis.

Although Plaintiff did not move for summary judgment on this claim,[2] the undersigned recommends that the Court enter summary judgment in Plaintiff's favor against Defendant Mike

---

[2] Plaintiff filed an early motion for summary judgment on the sole ground that Defendants failed to timely respond to his requests for admissions. The Court denied that motion on March 25, 2026 (ECF No. 125). Plaintiff has not moved for summary judgment on the basis of Defendants' faulty contractual interpretation.

Davis pursuant to Federal Rule of Civil Procedure 56(f)(1) for breach of the Settlement Agreement's chapel access provisions. For the reasons set forth above, the undersigned concludes that there are no genuine issues of material fact precluding entry of judgment in Plaintiff's favor as to liability for compensatory damages arising out of Davis's improper construal of the Settlement Agreement to not require chapel access for Plaintiff at MCI. Any objection to the intended judgment entry must be filed **WITHIN FOURTEEN DAYS** of the date of this Report and Recommendation.

**B.        First Amendment Retaliation**

A First Amendment retaliation claim involves three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The undersigned concluded on two previous occasions that Plaintiff had established his engagement in protected conduct by seeking religious accommodation and by filing, maintaining, and dismissing his suit against Defendants in Lorain County. (*See* ECF Nos. 33, 94, citing *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011) ("Prisoners retain the First Amendment right to the free exercise of their religion.") (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)); *Thaddeus-X*, 175 F.3d at 391 (inmates have a First Amendment right to file lawsuits challenging their prison conditions)). Defendants do not dispute that Plaintiff engaged in this protected conduct, but they argue that Plaintiff cannot establish an adverse action or retaliatory motive.

Defendants' arguments fall short. "[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (6th Cir. 1999) (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982)). Defendants' denial of

chapel access to Plaintiff at MCI in violation of the Settlement Agreement satisfies this element. *See LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (transfer that had the effect of depriving a prisoner of benefits due under a settlement agreement constituted an adverse action).

Defendants also have not shown that Plaintiff cannot establish a retaliatory motive for denying Plaintiff chapel access at MCI. Plaintiff submits an August 14, 2023 email sent by Defendant Ronald Smith (GCI's Chaplain) to, among others, Defendants Mike Davis (ODRC's Religious Service Administrator) and Keith Foley (GCI's Warden), with the subject "Transfer." (ECF No. 139-6.) In this email, Chaplain Smith summarizes the difficulties GCI experienced in trying to accommodate Plaintiff's religious needs in the face of Plaintiff's disruptiveness:

> [Plaintiff] has turned every initiative to enable him to become a productive citizen into a battle, pushing his will through this institution and those that serve here into countless grievances and in due course, litigation. These action were initiated by [Plaintiff] shortly after his arrival to Grafton Correctional Institution in 2013 and have continued to the present.
>
> * * *
>
> I have interviewed [Netzarim volunteer] Donald West regarding the current atmosphere within the Messianic Community, and . . . he does acknowledge the tension and the demonstrations of anger by the subject of this letter. Chaplain Hill . . . has also witnessed the slamming doors, the arguments with Religious Services program aides, and the attempts by [Plaintiff] to lead a group (calling his peers to worship by blowing a ram's horn, writing agenda items on a whiteboard, insisting that he read passages of Torah during service, etc.), a group that already has a leader/supervisor in Donald West.

(*Id.*) Defendant Mike Davis responds to this email, stating, "Thank you for the summation. It is clear that he presents a problem relative to the provision of religious services beyond his own stated requests." (*Id.*) Thus, it is clear that several GCI and ODRC employees—including Mike Davis—were frustrated with Plaintiff's persistent requests for religious accommodation at GCI. When also considering the four-month gap between Plaintiff's dismissal of the Lorain County action and Davis's email disclaiming application of the Settlement Agreement to MCI, the record

10

reflects a dispute of fact as to whether the denial of access to MCI's chapel was retaliatory. *See, e.g.*, *Lemaster v. Lawrence Cty., Ky.*, 65 F.4th 302, 310 (6th Cir. 2023) (four and a half months between protected First Amendment activity and adverse action, in combination with other evidence, could support retaliatory motive).

Further, Defendants are not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). But "[t]he defense of qualified immunity protects officials from individual liability for money damages[, ] not from declaratory or injunctive relief." *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001). Here, Plaintiff seeks only injunctive relief for his retaliation claim; qualified immunity therefore does not apply.

Again, however, the Court must be mindful of the appropriate Defendants for this claim. Again, the only Defendants who could be liable for retaliation would be those responsible for the adverse action—that is, those involved in construing the Settlement Agreement's provisions to not require chapel access at MCI. As explained above, the only possibly responsible person on the record before the Court is Mike Davis. There is no evidence suggesting that Defendants Baker-Webb or B. Smith (who had no dealings with Plaintiff prior to his transfer) had a retaliatory motive for denying Plaintiff chapel access at MCI; rather, it appears they were merely following the instructions of Davis, who advised that "the chapel access the Settlement Agreement provided for Mr. Krzywkowski only applied to the chapel at GCI, and not the chapel

at MCI . . . ." (Baker-Webb Decl. ¶ 10, ECF No. 129-8.) Accordingly, Plaintiff's First Amendment retaliation claim may proceed only against Defendant Davis.[3]

## IV.    DISPOSITION

For these reasons, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 128) be **GRANTED IN PART and DENIED IN PART**, in that it is **RECOMMENDED** that

- Plaintiff's breach of contract claim on grounds that Defendants failed to follow up with Netzarim volunteers, and all claims against Defendants Foley, Cheers, R. Smith, Mustard, May, Baker-Webb, and B. Smith be **DISMISSED**;

- Plaintiff's breach of contract claim, on grounds that Defendants denied Plaintiff chapel access at MCI and Plaintiff's First Amendment retaliation claim be permitted to proceed against Defendant Davis; and

- the Court enter judgment in Plaintiff's favor against Defendant Davis as to liability for breach of the Settlement Agreement's chapel access provision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

---

[3] Aside from Plaintiff's transfer to MCI and subsequent denial of chapel access, Plaintiff asserts that Defendants took several other actions against him (transferring Plaintiff out of the Faith Based Housing Unit; failing to provide Plaintiff with a functional tablet to access the grievance procedure; canceling Messianic religious services and preventing a Messianic volunteer from entering GCI to facilitate Sabbath services; and using chapel porters to harass Plaintiff and fellow congregates) that amount to an adverse action for purposes of his retaliation claim. *See Thaddeus-X*, 175 F.3d at 396 (quoting with approval *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("'[A]n entire campaign of harassment' was actionable because although it was 'trivial in detail,' it 'may have been substantial in gross.'")). As best the undersigned can tell, all of these actions took place prior to Plaintiff's transfer out of GCI and were taken by GCI employees. Accordingly, because Plaintiff seeks only prospective relief on his retaliation claim, none of the GCI employees can be liable for retaliation with regard to these actions. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (concluding that inmate's claims for declaratory and injunctive relief were rendered moot upon inmate's transfer from the prison about which he complained).

12

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

13