**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Grady Krzywkowski,**

**Plaintiff,**

**v.**

**Mike Davis, *et al.*,**

**Defendants.**

**Case No. 2:24-cv-3902**

**Judge Michael H. Watson**

**Magistrate Judge Vascura**

**OPINION AND ORDER**

This docket in this action is a mess, but the Court proceeds herein as orderly as possible.

## I. BACKGROUND

Grady Krzywkowski's ("Plaintiff") sixty-three-page Complaint can be summarized as follows. Plaintiff practices the religion of Netzarim (or Natsarim) Judaism. ECF No. 21 at PAGEID # 909.[1] He is also an inmate confined to the Ohio Department of Rehabilitation and Correction ("ODRC"). *Id.* He proceeds *pro se* and *in forma pauperis*. Order, ECF No. 33.

This is a prisoner civil rights suit, and it is related to Plaintiff's prior prisoner civil rights suit, Case No. 2:14-cv-2159 ("The 2159 Case").[2] ECF No. 7. The 2159 Case alleged that various defendants ("2159 Defendants")—many of whom

[1] All citations are to docket entries in this case unless specifically noted.
[2] Case No. 2:14-cv-2159, itself, had many member cases and was related to many other cases. *See generally* docket, Case No. 2:14-cv-2159.

were never named as defendants in this case—violated Plaintiff's First and Fourteenth Amendment rights and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), by failing to grant religious accommodations and by retaliating against Plaintiff while he was incarcerated at the Grafton Correctional Facility ("GCI"). *See generally* Op. and Order, ECF No. 28 (Case No. 2:14-cv-2159).

The Magistrate Judge assigned to this case was also assigned to the 2159 Case, and she successfully mediated that lawsuit. *Pro bono* counsel represented Plaintiff during the mediation. The parties to the 2159 Case signed a settlement agreement ("SA") following mediation. ECF No. 21 at PAGEID # 908–09; *see also* ECF No. 93 (Case No. 2:14-cv-2159). The SA requires the 2159 Defendants and the ODRC—which was not a party to the 2159 Case but was, nonetheless, a party to the SA—to, *inter alia*, provide Plaintiff with certain religious accommodations. SA § II.3, ECF No. 4-3.

*This* case[3] alleges that every defendant sued here—Gary Mohr ("Mohr), Religious Service Administrator Mike Davis ("Davis"), GCI Warden Keith Foley ("Warden Foley"), Dessey Cheers ("Cheers"), GCI Chaplain Ronald Smith, Jeff Mustard ("Mustard"), Marion Correctional Institution ("MCI") Warden Harold May ("Warden May"), Katrenia Baker-Webb ("Baker-Webb"), MCI Chaplain Blaire

[3] The claims at issue in this lawsuit were originally asserted in a state-court Complaint. *E.g.*, ECF No. 96-1. Plaintiff survived summary judgment in that state-court case (on the breach-of-contract and retaliation claims) but ultimately dismissed it (over the defendants' objections) and refiled it here. ECF No. 4-2 at PAGEID # 685.

Smith, and various John or Jane Does (collectively, "3902 Defendants")—breached the SA, even though many of the 3902 Defendants did not sign the SA. For relief, Plaintiff seeks: (1) a declaration that the SA applies to MCI and any other ODRC institution to which he might be assigned; (2) an injunction preventing further retaliation, compelling compliance with the SA, and compelling a return to GCI (or recission of the SA); and (3) compensatory and punitive damages. ECF No. 21 at PAGEID ## 943–67.

Specifically, this lawsuit alleges that the 3902 Defendants breached the SA almost immediately after it became effective and retaliated against Plaintiff in violation of the First Amendment. ECF No. 21 at PAGEID # 910. Indeed, the Complaint alleges that the 3902 Defendants breached the SA by failing to make best efforts on various occasions and retaliated against Plaintiff by, *inter alia*, transferring him from GCI to MCI and then denying Plaintiff access to the chapel at MCI. *E.g.*, *id.* at PAGEID ## 911–25.

On an initial screen of Plaintiff's Complaint, the Court dismissed all claims against the John and Jane Doe Defendants and Mohr. ECF Nos. 33, 41. The Court also dismissed Plaintiff's request for punitive damages in conjunction with his breach-of-contract claims, and it dismissed his breach-of-contract claims that were based on the alleged failure to provide Plaintiff with sack meals for certain religious holidays. *Id.* All other breach-of-contract claims, and the retaliation claims, survived the initial screen as to Davis, Warden Foley, Cheers, Chaplain

Ronald Smith, Mustard, Warden May, Baker-Webb, and Chaplain Blair Smith (collectively, "Remaining Defendants"). *Id.*

Thereafter, Remaining Defendants moved for judgment on the pleadings, and Plaintiff moved for partial summary judgment. ECF Nos. 51, 68. The Magistrate Judge issued an R&R, recommending that the Court deny both motions. ECF No. 94. No party objected to that recommendation, and this Court adopted it. ECF No. 99.

Plaintiff later moved again for summary judgment. ECF No. 104. The Magistrate Judge again recommended denying Plaintiff's motion. ECF No. 144. Plaintiff did not object, and the Court adopted that recommendation. ECF No. 145.

Remaining Defendants now move for summary judgment. ECF No. 128. The Magistrate Judge recommends granting in part and denying in part that motion. ECF No. 146. Specifically, her at-issue Report and Recommendation ("R&R") contains three recommendations.

First, the R&R recommends granting Remaining Defendants summary judgment on Plaintiff's claims that any Remaining Defendant breached § II.5 of the SA, which requires Defendants to "continue to exercise best efforts to follow up with qualified Natsarim volunteers who have been identified to them to assist with and/or lead Natsarim congregate services on Shabbat and/or Natsarim holy days." R&R at 5, ECF No. 146.

Second, the R&R recommends granting all Remaining Defendants save Davis summary judgment on Plaintiff's breach-of-contract claims alleging that Defendants breached § II.4 and § II.10 of the SA by failing to use best efforts to provide Plaintiff access to the chapel at MCI. *Id.* at 5–9. But the R&R recommends granting summary judgment to Plaintiff and against Davis on those claims. *Id.* at 5–9.

Third, the R&R recommends granting summary judgment to all Remaining Defendants save Davis on Plaintiff's First Amendment retaliation claims but denying Davis summary judgment on those claims. *Id.* at 9–12.

Remaining Defendants partially object, ECF No. 153; Plaintiff does not, ECF No. 162.

## I. STANDARD OF REVIEW

The standard governing objections is set forth in Federal Rule of Civil Procedure 72(b)(3). Pursuant to that rule, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify the recommended disposition; receive further evidence or return the matter to the magistrate judge with instructions." *Id.*

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986). The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (citation omitted). Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## II. ANALYSIS

The Court begins by adopting those dispositions to which no party objected and then considers Remaining Defendants' objections.

### A. The Court adopts those portions of the Magistrate Judge's recommended disposition to which no party objected.

No party objected to the Magistrate Judge's recommendation that the Court grant all Remaining Defendants summary judgment on Plaintiff's breach-of-contract claims premised on a violation of § II.5 of the SA.

Nor does any party object to the recommendation that the Court grant summary judgment to Warden Foley, Cheers, Chaplain Ronald Smith, Mustard, Warden May, Baker-Webb, and Chaplain Blaire Smith on Plaintiff's breach-of-contract claims alleging a breach of §§ II.4 and II.10 by the failure to use best efforts to afford Plaintiff access to the chapel at MCI.

Nor does any party object to the recommendation that the Court grant summary judgment to Warden Foley, Cheers, Chaplain Ronald Smith, Mustard, Warden May, Baker-Webb, and Chaplain Blaire Smith on Plaintiff's First Amendment retaliation claims.

Accordingly, the Court **ADOPTS** those portions of the recommended disposition without conducting a *de novo* review.

### B. The Court overrules Remaining Defendants' objections.

Remaining Defendants object to the recommendation that the Court grant summary judgment in favor of Plaintiff and against Davis on Plaintiff's breach-of-

contract claims alleging that ODRC (through Davis) breached § II.4 and/or § II.10 of the SA by interpreting the SA to require best efforts to access the chapel at only GCI (thereby causing ODRC to fail to exercise best efforts to grant Plaintiff chapel access at MCI). Additionally, Remaining Defendants object to the recommendation that the Court deny Davis summary judgment on Plaintiff's First Amendment retaliation claims.

The Court has conducted a thorough review of the summary judgment briefing, the R&R, and the briefing on Remaining Defendants' objections. Having done so, the Court determines *de novo* that the objected-to recommended dispositions of the R&R are correct. Accordingly, the Court **OVERRULES** Remaining Defendants' objections and **ADOPTS** those portions of the R&R. In doing so, the Court offers several clarifications, however.

First, although the R&R implied as much, the Court explicitly clarifies that Davis is not a signatory to the SA. *See* Ex. A, ECF No. 4-3 at PAGEID # 688, 695–98. He therefore cannot be individually liable for any breach of contract.[4] Accordingly, the Court intends to *sua sponte* **GRANT** Davis summary judgment on all of Plaintiff's individual-capacity breach-of-contract claims.

Second, in adopting the R&R, the Court clarifies that additional breach-of-contract claims remain for trial beyond those identified in the R&R. That is,

[4] But, no party disputes that Plaintiff's official-capacity claims against Davis are actually claims against ODRC, which *is* a party to the SA. *See* Ex. A, ECF No. 4-3 at PAGEID # 688; Compl., ECF No. 21-2 at PAGEID # 974. So, the question is whether ODRC, through Davis, breached the SA's provisions governing chapel access.

Remaining Defendants did not move for summary judgment on Plaintiff's claims that they breached §§ II.4 and II.10 of the SA by failing to exercise best efforts for chapel access at *GCI*.

To clarify the universe of claims Plaintiff asserts in this action, the Court turns to the Complaint. The Complaint alleged that the SA protected Plaintiff's "access to the chapel for religious services/videos . . . ." Compl. 4, ECF No. 21. It further alleged that Remaining Defendants breached that provision multiple times at both at GCI *and* MCI. Each alleged breach constitutes a separate claim for breach of contract.

Regarding GCI, the Complaint alleged that Remaining Defendants failed to use best efforts and denied him access to the GCI chapel in April, May, July, August, September, and December of 2018. *Id.* at 6 n.11. Plaintiff alleged the same occurred on Sukkot in 2021 and in "Spring 2023, on May 27, 2023, and July 15, 2023, July 22, 2023[.]" Compl. 6 n.11 & n.14, 9, ECF No. 21; Compl. Ex. 9, ECF No. 1-8 at PAGEID # 178–79.

But it does not appear that Remaining Defendants even moved for summary judgment on those breach-of-contract claims. *See generally* ECF No. 128. Without any argument that there is no genuine dispute of material fact as to whether Remaining Defendants made best efforts on the above-listed dates to provide Plaintiff with access to GCI's chapel, many of those breach-of-contract claims must survive.

Nonetheless, the Court concludes that, despite Remaining Defendants' failure to move for summary judgment on those breach-of-contract claims, certain of the claims are patently meritless.

First, Mustard, Warden May, Baker-Webb, and Chaplain Blair Smith are entitled to summary judgment on these claims (both individual- and official-capacity) as the Complaint does not allege that these individuals had any part in denying Plaintiff access to the GCI chapel. Indeed, these individuals all appear to work at MCI. Accordingly, the Court intends to *sua sponte* **GRANT** these individuals summary judgment on these claims.

That leaves Warden Foley, Cheers, and/or Chaplain Ronald Smith, in addition to the official-capacity claims against Davis. But neither Warden Foley nor Cheers signed the SA. Accordingly, the Court intends to also *sua sponte* **GRANT** them summary judgment on all such individual-capacity breach-of-contract claims.

Finally, with respect to the remaining Remaining Defendants against whom these claims could lie (Davis, Warden Foley, and Cheers in their official capacities and Chaplain Ronald Smith in both his individual and official capacities), the Court further narrows the claims.

The SA plainly states that it is not effective until it is approved by the Ohio Attorney General and Director of the ODRC. SA § V.4, ECF No. 4-3. Stuart Hudson, the then-interim Director of the ODRC, signed the SA on September 21,

2018, so it could not have been effective before that date.[5] Accordingly, any denial of access to the GCI chapel that occurred before September 21, 2018, could not have been a breach of contract.

Accordingly, the Court intends to *sua sponte* **GRANT** summary judgment to Davis, Warden Foley, Cheers, and Chaplain Ronald Smith on Plaintiff's official-capacity breach-of-contract claims based on a denial of access to the GCI chapel in April, May, July, or August of 2018. The Court intends to *sua sponte* **GRANT** summary judgment to Chaplain Ronald Smith on those individual-capacity claims as well.

But because Remaining Defendants did not move for summary judgment on Plaintiff's breach-of-contract claims based on a denial of access to the GCI chapel in September and December of 2018, on Sukkot in 2021, and in "Spring 2023, on May 27, 2023, and July 15, 2023, July 22, 2023," those claims shall proceed to trial against Chaplain Ronald Smith in his individual and official capacities and against Davis, Warden Foley, and Cheers in their official capacities.

Finally, the Court clarifies that although it grants Plaintiff summary judgment as to liability on his official-capacity breach-of-contract claims against

[5] A representative from the Attorney General's Office signed the SA on September 19, 2018. *See* ECF No. 4-3.

Davis based on the failure to use best efforts to provide chapel access at MCI, compensatory damages[6] (if any) must be proven at trial.

## III. CONCLUSION

Pursuant to the above, the Court:

- **GRANTS** all Remaining Defendants summary judgment on Plaintiff's breach-of-contract claims premised on a violation of § II.5 of the SA;
- **GRANTS** summary judgment to Warden Foley, Cheers, Chaplain Ronald Smith, Mustard, Warden May, Baker-Webb, and Chaplain Blaire Smith on Plaintiff's breach-of-contract claims alleging a breach of §§ II.4 and II.10 by the failure to use best efforts to afford Plaintiff access to the chapel at MCI;
- **DENIES** Davis summary judgment and **GRANTS** Plaintiff summary judgment on liability only as to Plaintiff's official-capacity breach-of-contract claims alleging a breach of §§ II.4 and II.10 by the failure to use best efforts to afford Plaintiff access to the chapel at MCI;
- **GRANTS** summary judgment to Warden Foley, Cheers, Chaplain Ronald Smith, Mustard, Warden May, Baker-Webb, and Chaplain Blaire Smith on Plaintiff's First Amendment retaliation claims;
- **DENIES** Davis summary judgment on Plaintiff's First Amendment retaliation claims.

In addition, the Court intends to *sua sponte* enter the following judgments independent of motion, pursuant to Federal Rule of Civil Procedure 56(f):

- **GRANT** Davis summary judgment on Plaintiff's individual-capacity breach-of-contract claims alleging a breach of §§ II.4 and II.10 by the failure to use best efforts to afford Plaintiff access to the chapel at MCI;

[6] The Court has already denied Plaintiff's request for punitive damages for all breach-of-contract claims.

- **GRANT** Mustard, Warden May, Baker-Webb, and Chaplain Blair Smith (all MCI employees) summary judgment on Plaintiff's individual- and official-capacity claims alleging a breach of §§ II.4 and II.10 by the failure to use best efforts to afford Plaintiff access to the chapel at GCI;

- **GRANT** Davis, Warden Foley, and Cheers summary judgment on Plaintiff's individual-capacity claims alleging a breach of §§ II.4 and II.10 by the failure to use best efforts to afford Plaintiff access to the chapel at GCI;

- **GRANT** Davis, Warden Foley, Cheers, and Chaplain Ronald Smith summary judgment on Plaintiff's official-capacity claims alleging a breach of §§ II.4 and II.10 by the failure to use best efforts to afford Plaintiff access to the chapel at GCI in April, May, July, or August of 2018 (and **GRANT** Chaplain Ronald Smith summary judgment on those individual-capacity claims against him);

Pursuant to Federal Rule of Civil Procedure 56(f), the Court will provide Plaintiff with **THIRTY DAYS** from the date of this Opinion and Order to show cause why the Court should not grant the *sua sponte* summary judgments contemplated above. To reiterate, if the Court grants the intended *sua sponte* summary judgments, the only **claims** remaining for trial would be:

- Plaintiff's individual- and official-capacity claims against Davis for First Amendment retaliation,

- Plaintiff's official-capacity claims against Davis, Warden Foley, Cheers, and Chaplain Ronald Smith for breach of § II.4 or § II.10 of the SA by failing to use best efforts to provide Plaintiff access to the GCI chapel periodically in September, twice in December of 2018, on Sukkot in 2021, and in Spring 2023, on May 27, 2023, and July 15, 2023, July 22, 2023 (and Plaintiff's individual-capacity claim against Chaplain Ronald Smith for the same);

Additionally, the **issue** of compensatory damages for Davis's breach of §§ II.4 and II.10 of the SA by failing to use best efforts to provide Plaintiff access to the chapel at MCI would remain for trial.

Before the Court will set this matter for trial, the parties are **ORDERED** to participate in another mediation before the Honorable Chelsey M. Vascura. As before, the Court will endeavor to find counsel willing to represent Plaintiff *pro bono* for that mediation.

**IT IS SO ORDERED.**

Michael H. Watson

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**